UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVE BROWN,

       Petitioner,

v.                                        CASE NO. 6:09-cv-785-Orl-28KRS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

       Respondents.

_____/

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 8). Petitioner filed replies to the response (Doc. Nos. 15 and 16 ).

Petitioner alleges eight claims for relief in his habeas petition: 1) the trial court failed to suppress an improper pre-trial identification that was obtained in violation of his right to counsel; 2) the trial court erred by admitting the identification testimony of the State's witnesses; 3) the prosecutor failed to timely disclose exculpatory information; 4) the trial court erred by allowing the prosecutor to comment on his right to remain silent; 5) he was

denied effective assistance of appellate counsel; 6) trial counsel was ineffective for failing to "interview, subpoena, and call [certain witness] to testify"; 7) newly discovered evidence demonstrates that he is actually innocent; and 8) trial counsel was ineffective for failing to introduce evidence of a booking photograph of Fabian Moore.

I.     *Procedural History*

Petitioner was charged by amended information with attempted first degree murder with a firearm and aggravated battery with a firearm. A jury trial was held, and Petitioner was found guilty as to the following:  1) the lesser included offense of attempted second degree murder; and 2) aggravated battery. The trial court adjudicated Petitioner guilty of the crimes and sentenced him to imprisonment for a term of thirty-five years as to the attempted second degree murder count (to be followed by probation for a term of ten years) and to time-served as to the battery count. Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam.*

Petitioner next filed a petition for writ of habeas corpus with the state appellate court, which was denied. Petitioner then filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, along with an amendment thereto, both of which were denied. Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam.*

Petitioner subsequently filed a second petition for writ of habeas corpus with the state appellate court, which was denied.

Petitioner filed another Rule 3.850 motion with the state trial court, which was

2

denied. Petitioner appealed the denial, and the state appellate court 1) found that Petitioner's sentence for the attempted second degree murder conviction exceeded the statutory maximum, 2) reversed the order denying Petitioner's Rule 3.850 motion; and 3) remanded the case to the trial court for correction of the sentence. The trial court then entered an order correcting Petitioner's sentence such that Petitioner was sentenced to imprisonment for a term of thirty years, with a twenty-five year minimum mandatory sentence. The probationary period was deleted as well. The state appellate court affirmed that order *per curiam*.

Petitioner also filed a third petition for writ of habeas corpus with the state appellate court, which was denied.

## II.    Legal Standards

### A.    Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

3

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11ᵗʰ Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11ᵗʰ Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing

---

[1] In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

4

evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

B.     *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984),

established a two-part test for determining whether a convicted person is entitled to relief

on the ground that his counsel rendered ineffective assistance: (1) whether counsel's

performance was deficient and "fell below an objective standard of reasonableness"; and

(2) whether the deficient performance prejudiced the defense.[2] *Id.* at 687-88. A court must

adhere to a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the

facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v.*

*Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective

assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the
> test even what most good lawyers would have done. We ask only whether
> some reasonable lawyer at the trial could have acted, in the circumstances,
> as defense counsel acted at trial. Courts also should at the start presume
> effectiveness and should always avoid second guessing with the benefit of
> hindsight. *Strickland* encourages reviewing courts to allow lawyers broad
> discretion to represent their clients by pursuing their own strategy. We are
> not interested in grading lawyers' performances; we are interested in

---

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court
clarified that the prejudice prong of the test does not focus solely on mere outcome
determination; rather, to establish prejudice, a criminal defendant must show that counsel's
deficient representation rendered the result of the trial fundamentally unfair or unreliable.

whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.    *Analysis*

### A.    *Factual Background*

The trial in this case was held in 2001, and the victim, Ismail Cooper (also known as "Jeff Brown"), testified that he had known Petitioner (also known as "Slick") since 1997. (Appendix II, Transcript of Trial at 40.)  On October 29, 2000, the victim saw Petitioner outside the Magic Mall, and they became involved in a verbal dispute.  *Id.* Subsequently, Petitioner pulled out a gun and shot at the victim four or five times.  *Id.* at 41-42.  The victim described the wounds he received and identified Petitioner as the shooter.  *Id.* at 43-48.

Officer Steve Stanaland testified that, on the day of the incident, he was working in an off-duty capacity at the Magic Mall.  *Id.* at 74.  From a distance of approximately 75 to 80 feet, he observed two men arguing, and he then heard a gunshot.  *Id.* at 77.  The victim ran toward him, and he heard three more shots.  *Id.*  The victim stated that he had been shot, and he identified the shooter as Slick.  *Id.* at 78.  The victim then told him that Petitioner had fled in a gray SUV, which was exiting a nearby car wash.  *Id.*

Ralph Augustine testified that, on the day of the incident, he and Jean Delva were

working at the car wash area of the Magic Mall installing car radios. *Id.* at 123. He saw a gray SUV pull up into the area, and he heard individuals arguing and then heard shots fired. *Id.* at 126-28. He provided a written statement to the police, indicating that the shooter jumped into the driver's seat of a truck and took off and that he could identify the shooter. *Id.* at 129. He then went to the police department where he identified the driver of the vehicle and another individual who had been present during the altercation. However, at trial, Mr. Augustine was hesitant in describing what he had witnessed, and he could not identify anyone in the courtroom. *Id.* at 131-33. Mr. Augustine did state that he had told the truth when he initially spoke with the police. *Id.* at 136.

Jean Delva testified that, on the day of the incident, he was installing car radios at the car wash area of the Magic Mall. *Id.* at 140. He saw a gray SUV pull up into the area, and he heard individuals arguing and then heard shots fired. *Id.* at 140-43. He stated that the driver of the vehicle fired the shots. *Id.* at 142-44. He then went to the police department where he identified the shooter. *Id.* at 145-46. Mr. Delva could not identify the shooter in the courtroom, but he stated that he had told the truth to the police on the day of the incident. *Id.* at 146.

Officer Lori Fiorino testified that she responded to a shooting at the Magic Mall and that she later met with Mr. Delva and Mr. Augustine at the police department. *Id.* at 167-68. Both Mr. Delva and Mr. Augustine positively identified Petitioner as the shooter and also indicated that Fabian Moore was not the shooter. *Id.* at 178-180.

Detective Reginald Campbell testified that Petitioner refused to submit to the gun

residue test and that he subsequently observed Petitioner spitting in his hands and rubbing them together in order to make the test negative. *Id.* at 268-69.

Petitioner testified that he was at the Magic Mall on the day of the incident; that he was driving a Lincoln Navigator; and that he had known the victim since 1996. *Id.* at 328-30. However, Petitioner denied arguing with or shooting the victim. *Id.* at 334-35, 337-38. Petitioner also stated that he rubbed his hands together because they were dirty. *Id.* at 334.

**B.    *Claim One***

Petitioner argues that the trial court failed to suppress an improper pre-trial identification that was obtained in violation of his right to counsel. He states that law enforcement obtained the pre-trial identification by means of a highly suggestive procedure and that the circumstances of the line-up procedure required the presence of an attorney. This claim was raised in Petitioner's direct appeal.

The appropriate test for out-of-court identifications is as follows: 1) whether the police employed an unnecessarily suggestive procedure in obtaining an out-of-court identification;   and 2) if so, considering all the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. *Coleman v. State,* 610 So. 2d 1283, 1286 (Fla. 1992). In the present case, shortly after the shooting, the two eyewitnesses were merely shown the two recently arrested suspects, and they immediately and positively identified Petitioner as the shooter, without any prompting. There was no requirement that counsel be present under these circumstances.

Additionally, it is apparent that the eyewitnesses identified Petitioner based on their

8

memory of the shooter, and not for any other reason. Further, the jury was able to consider the reliability of the identification, make credibility determinations as to the eyewitnesses, and consider all factors in making its decision.

Consequently, Petitioner has failed to meet his burden of showing that the out-of-court identification procedure was so impermissibly suggestive that there was a substantial likelihood of misidentification. Likewise, Petitioner has not demonstrated that the state appellate court's denial of this claim involved an unreasonable application of federal law or was contrary to clearly established federal law.

**B.    *Claim Two***

Petitioner states that the trial court erred by admitting the identification testimony of the State's witnesses since, at trial, these witnesses denied having identified Petitioner as the shooter. This claim was raised on direct appeal.

In the present case, both of the eyewitnesses had testified that the driver of the SUV was the individual with the gun. Neither eyewitness had any hesitancy or doubt in selecting Petitioner as the shooter shortly after the crime was committed. Moreover, other testimony established that Petitioner was arrested leaving the area of the Magic Mall moments after the shooting while driving a SUV, and Petitioner admitted that he was at the scene of the crime and that, after the shooting, he got into the driver's seat of the SUV and left. Both Detective Campbell and Officer Fiorino testified that the two witnesses made positive identifications of Petitioner without any prompting, and the victim testified that he had known Petitioner for years and had repeatedly and consistently identified him as

9

the shooter.

The jury could have believed the eyewitness' prior identifications, despite the in-court doubts and denials. As noted by the state appellate court in *Brown v. State,* 413 So. 2d 414, 416 (Fla. 5th DCA 1982),

> Manifestly, this is not to say that when a witness changes his story, the first version is invariably true and the later is the product of distorted memory, corruption, false suggestion, intimidation or appeal to sympathy ... [but] the greater the lapse of time between the event and the trial, the greater the chance of exposure of the witness to each of these influences . . . .

(Citations omitted) (quotations omitted). As such, it cannot be said that the state court's denial of this claim was "contrary to, or involved an unreasonable application of, clearly established federal law" or was "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). As a result, Petitioner is not entitled to federal habeas relief on this claim.

## C.   Claim Three

Petitioner argues that the prosecutor failed to timely disclose exculpatory information.   In particular, he states that the prosecutor's late disclosure of the gunshot residue results denied him a fair trial. This claim was raised on direct appeal.

At trial, crime scene technician Sandra Clark testified for the State that Petitioner had refused to submit to a gunshot residue test. (Appendix II, Transcript of Trial at 206.) On cross-examination, defense counsel asked Ms. Clark if she conducted a gunshot residue test on Fabian Moore. *Id.* The State objected on the basis that Ms. Clark was not qualified to testify as to the results of that test, and the trial court sustained the objection. *Id.* at 207.

A discussion of those test results then ensued, and the prosecutor stated that she was unfamiliar with the report. *Id.* at 209. On the other hand, Mr. Blanker, one of the defense attorneys, stated that he contacted the laboratory and obtained the report "yesterday." *Id.* Mr. Blanker admitted that he did not believe that the State "tried to hide this," but he suggested that the State had "a duty to check." *Id.*

The trial court noted that the report indicated that the residue could have been the result of an individual merely having been in proximity to a firearm during discharge or touching a surface bearing some residue. *Id.* at 210. Mr. Blanker sought to introduce the test results, and the prosecutor suggested that the introduction of this evidence should be done through the testimony of Deborah Stieger Lightfoot, a crime analyst and expert in gunshot residue, rather than through Ms. Clark. *Id.* at 212. Subsequently, Ms. Lightfoot testified concerning the gunshot residue test results from Mr. Moore.

It appears that any discovery violation concerning this matter could be attributed to the defense because defense counsel had the test results on Mr. Moore at least a day prior to the prosecution finding out about them. In any event, the test results were introduced into evidence as requested by defense counsel. However, the test results were inconclusive and were of minimal relevance in establishing who had discharged the firearm. In fact, Ms. Lightfoot testified that "I can't distinguish who fired the weapon and who handled something with gunshot residue on it by the tests that I perform." *Id.* at 248. As such, Petitioner has failed to demonstrate that the trial court erred with regard to this matter, and, moreover, any error with regard to this matter appears to have been

harmless.[3] Under the circumstances, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.

### D.   Claim Four

Petitioner states that the trial court erred by allowing the prosecutor to comment on his right to remain silent. In particular, Petitioner states that the prosecutor introduced evidence of Petitioner's refusal to submit to a gunpowder residue test. This claim was raised on direct appeal.

Detective Reginald Campbell testified that he advised Mr. Moore of his *Miranda*[4] rights and that Mr. Moore made a statement and submitted to a gunshot residue test. *Id.* at 260. The prosecutor then asked him if he had advised Petitioner of his *Miranda* rights, and the trial court immediately stopped the questioning in order to find out if the prosecutor was "about to comment on his right to remain silent." *Id.* at 261-62. Defense counsel then moved for a mistrial, which was denied. *Id.* at 263-67. The trial court decided to limit the line of inquiry as to whether Petitioner had declined to submit to a gunshot residue test, which was the only matter elicited. *Id.* at 268.

---

[3]In addition, Petitioner has not demonstrated that the state court's ruling with regard to this matter was erroneous or that the ruling deprived him of a fundamentally fair trial. *McCoy v. Newsome*, 953 F.2d 1252, 1265 (11th Cir. 1992) ("Federal habeas corpus relief based on evidentiary rulings will not be granted unless it goes to the fundamental fairness of the trial."). Moreover, Petitioner has failed to establish that the alleged error by the trial court with regard to this matter had a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993).

[4]*Miranda v. Arizona*, 384 U.S. 436 (1966).

Thus, the trial court ended the prosecutor's line of inquiry before anything was elicited concerning Petitioner's exercise of his right to remain silent. Accordingly, there was never any comment on Petitioner's right to remain silent.

Moreover, in his opening statement, defense counsel had informed the jury that Petitioner had requested an attorney when he was advised of his right to one. *Id.* at 32. Certainly, the effect of the revelation that Petitioner did not consent to the gunshot residue test was not prejudicial and did not impair the fairness of the proceeding, and any error with regard to this matter was harmless. *Mannarino v. State*, 869 So. 2d 650, 652 (Fla. 4th DCA 2004) ("Comments on a defendant's right to remain silent are subject to a harmless error analysis.").

As such, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.

E.    *Claim Five*

Petitioner states that he was denied effective assistance of appellate counsel. According to Petitioner, appellate counsel was unfamiliar with the status of the *Menna*[5] case when discussing whether the trial court erred in allowing the State to introduce evidence of Petitioner's refusal to submit to the gunpowder residue testing.

On direct appeal, appellate counsel raised several claims, including that the trial court erred in admitting evidence of Petitioner's refusal to take the gunshot residue test.

---

[5]*Menna v. State*, 846 So. 2d 502 (Fla. 2003).

In the reply brief, appellate counsel discussed the decision in *Herring v. State*, 501 So. 2d 19 (Fla. 3d DCA 1987) in which the state appellate court held that the trial court erred in admitting evidence that the defendant refused to submit to a hand swab test and that the admission of this evidence prejudiced the defendant's right to a fair trial. In *Menna*, the Supreme Court of Florida approved the *Herring* decision and found that evidence of the defendant's refusal to submit to a gunshot residue test could be excluded from admission at trial when there were viable explanations, other than the defendant's guilt, as to why he refused.

This claim is without merit. First, the *Menna* decision was rendered after mandate was issued in Petitioner's direct appeal. Second, the *Menna* decision specifically approved the *Herring* decision, which was argued and discussed by appellate counsel. Finally, appellate counsel was not ineffective for failing to predict how the Supreme Court of Florida would decide the *Menna* case several months after Petitioner's appeal was finalized. *See Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir.1994) ("We have held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.") (Quotation omitted).

Moreover, the record reflects that Petitioner's appellate counsel submitted an initial brief which was comprehensive, thorough, and well-argued. Certainly, the record clearly evinces the thoroughness and reasonableness of appellate counsel's work. *Cf. Thomas v. Scully*, 854 F. Supp. 944 (E.D.N.Y. 1994) (the appellate brief submitted by counsel clearly

14

showed the thoroughness of counsel's work).  The Court finds that appellate counsel's performance was not deficient and that Petitioner has not demonstrated prejudice.  Hence, this claim must fail.[6]

### F.    Claim Six

Petitioner states that   trial counsel was ineffective for failing to "interview, subpoena, and call [certain witnesses] to testify." He contends that Eric Jones and Danny Miller would have presented testimony implicating Mr. Moore as the shooter.  This claim was raised in Petitioner's Rule 3.850 proceedings and was denied because there had been no showing of prejudice.

Mr. Miller provided a statement to the police, and he merely described a person he saw running through the neighborhood where he was working.  *See* Appendix XXIV, Exhibit B to Petitioner's Rule 3.850 motion.  However, as Officer Campbell noted in his trial testimony, Mr. Miller was not at the scene of the crime and did not identify anyone as the shooter.  *See* Appendix II, Transcript of Trial at 293-94.  Consequently, there is no reasonable probability that Mr. Miller's testimony would have made a difference at trial.

Mr. Jones also provided a statement to the police, and he witnessed the shooting and

---

[6]Further, the Court finds that this claim  is precluded by section 2254(d).  In considering this claim, Petitioner has not shown that the state appellate court applied a rule that contradicted the governing law set forth in the cases of the United States Supreme Court.  Additionally, there is no indication that the result reached by the state appellate court was at odds with any United States Supreme Court case which considered "materially indistinguishable facts." Finally, Petitioner has not demonstrated that the state appellate court's application of the clearly established law regarding these issues was objectively unreasonable.

described the shooter as wearing a tank top and blue jean shorts.   *See* Appendix XXIV,
Exhibit A to Petitioner's Rule 3.850 motion.   Officer Campbell testified that the description
of the shooter's clothing by Mr. Jones was not consistent with the clothing worn by
Petitioner.   Nevertheless, Mr. Jones did not identify the shooter, and Petitioner has not
shown that there is a reasonable probability that his testimony would have made a
difference at trial, particularly when the victim knew Petitioner and identified him as the
shooter.

Moreover, the presentation of witness testimony is essentially strategy, and it is,
therefore, within trial counsel's domain. *See Gasanova v. United States*, 2007 WL 2815696,
at *9 (W.D. Tex. Sept. 6, 2007).   Mere speculation as to the testimony an uncalled witness
would have given is too uncertain. *Id.*   A petitioner cannot simply state that the testimony
would have been favorable; self-serving speculation will not sustain an ineffective
assistance claim. *Id.*   In the case of an uncalled witness, at the very least, the petitioner
must submit an affidavit from the uncalled witness stating the testimony he or she would
have given had they been called at trial. Id.   To show prejudice, the petitioner must show
not only that the uncalled witness's testimony would have been favorable, but also that the
witness would have testified at trial. *Id.*

As such, Petitioner fails to meet his burden of proving that the state court
unreasonably applied controlling Supreme Court precedent or unreasonably determined
the facts in denying relief on this claim.

## G.   *Claim Seven*

Petitioner contends that newly discovered evidence demonstrates that he is actually innocent. Petitioner refers to an affidavit from Mike Williams who stated that, in 2003 (about three years after the crime), Mr. Moore retrieved the gun used in the shooting from under the dashboard of the vehicle used by Petitioner when he fled from the scene of the shooting. Mr. Williams further stated that Mr. Moore was worried about the gun because, if the police found out about the gun, he (Mr. Moore) would have been arrested, as the only fingerprints on the gun belonged to Mr. Moore. This claim was raised in Petitioner's Rule 3.850 motion and was denied because there was no reasonable probability that the affidavit would have resulted in a different outcome at trial.

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 399 (1993); *see also Hence v. Smith*, 37 F. Supp.2d 970, 980 (E.D. Mich. 1999) (finding that "[a] claim of actual innocence based upon newly discovered evidence is not grounds for federal habeas relief."). Consequently, a claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him a trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding. *See Monroe v. Smith*, 197 F. Supp.2d 753, 763 (E.D. Mich. 2001). Accordingly, in the present case, Petitioner's claim that he has newly discovered evidence of his innocence does not state a claim upon which habeas relief can be granted, and it must be denied. *See id.*

17

Further, the newly discovered evidence in this case conflicts with other evidence in the record and suffers from credibility issues. For example, Mr. Williams' statement contradicts the actual defense theory that a third person with them "Black Hawk," a friend of Mr. Moore, was the shooter. *See* Appendix II, Transcript of Trial at 395-96. It also contradicts the identification of Petitioner as the shooter by eyewitnesses Mr. Augustine and Mr. Delva shortly after the shooting. Additionally, Mr. Moore may have handled the weapon and not actually discharged it at the crime scene. Thus, the evidence falls short of "truly persuasive demonstration of actual innocence." *See Herrera,* 506 U.S. at 417.

Finally, Petitioner had his claim of newly-discovered evidence considered by the State courts (both the trial court and appellate court considered the claim). Both agreed that the claim lacked merit. Their decisions are not contrary to, nor unreasonable applications of, clearly-established federal law.

### H.    *Claim Eight*

Petitioner argues that trial counsel was ineffective for failing to introduce evidence of a booking photograph of Mr. Moore. This claim was raised in Petitioner's Rule 3.850 motion and was denied because there was no basis to introduce the photograph.

During the cross-examination of Detective Campbell, Petitioner's counsel presented to Detective Campbell a photograph of Mr. Moore for identification purposes. (Appendix II, Transcript of Trial at 279-80.) However, Petitioner's counsel did not move to have the photograph introduced into evidence. According to Petitioner, Detective Campbell was "given a description from people who witnessed the shooting[, which] clearly described

18

. . . Fabian Moore."

As previously discussed, the victim and two eyewitnesses identified Petitioner as the shooter.  As such, Petitioner has failed to show that the failure to introduce the photograph of Mr. Moore was prejudicial.  The Court finds that counsel did not act unreasonably with regard to this matter and that there has been no showing of prejudice. Consequently, Petitioner has not demonstrated that the state court's denial of this claim was "contrary to, or involved an unreasonable application of, clearly established federal law" or was "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d).  As a result, Petitioner is not entitled to federal habeas relief on this claim.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Dave Brown is **DENIED,** and this case is **DISMISSED WITH PREJUDICE.**

2.      The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.      This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner has failed to make a substantial showing of the denial of a

19

constitutional right.[7]  Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, this ⟶2⟶ day of January,

2011.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies to:
sa 1/14
Counsel of Record
Dave Brown

---

[7]Pursuant to Rule 11 of the *Rules Governing Section 2254 Cases In the United States District Courts,*

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).  If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.  A motion to reconsider a denial does not extend the time to appeal.